## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MONROE RE, LLC; CT YA                                    :
SERVICES, LLC d/b/a NEWPORT ACADEMY,   :
                                                        :        Case No.: 3:21-cv-78
                                                        :
            PLAINTIFFS,                                 :
                                                        :
v.                                                      :
                                                        :
TOWN OF FAIRFIELD, CONNECTICUT; and    :
BRENDA L. KUPCHICK, individually and in her  :
official capacity as First Selectwoman of the Town  :
of Fairfield,                                          :
                                                        :
                                                        :
            DEFENDANTS.                                 :        January 19, 2021

## COMPLAINT

### I.  INTRODUCTION

1.      This lawsuit challenges disability discrimination by the Town of Fairfield,

Connecticut ("Town" or "Fairfield") and its chief elected official (collectively, the

"Defendants"), who have prevented the opening and operation of two small group homes for

young adults with anxiety, depression, trauma and other mental health conditions necessitating

the kinds of therapeutic interventions unavailable in their home settings.

2.      Plaintiffs Monroe RE LLC and CT YA Services LLC d/b/a Newport Academy

(hereinafter, "Newport" or "Plaintiffs") bring this civil rights action, pursuant to the federal Fair

Housing Act, the Americans with Disabilities Act, the Rehabilitation Act of 1973 and the

Connecticut Fair Housing Act, to remedy the effects of Defendants' discriminatory actions by

the Defendants that resulted in the denial of housing to Newport's clients and injured Newport's

reputation, finances, and ability to assist its clients in securing community-based housing.

Plaintiff seeks declaratory, injunctive, and monetary relief.

1

3.      In January 2019, Newport purchased two large single-family homes in Fairfield, Connecticut—at 2495 Redding Road and 3236 Congress Street, respectively—intending each to serve as a group home for six (6) young adults with anxiety, depression, trauma, and other mental health disorders best addressed in a group home setting.

4.      Despite complying with all relevant zoning, building and fire code requirements, the Town's chief elected official has—since at least February 2020—directed Town staff not to issue the Certificates of Occupancy ("Certificates") for Newport's group homes.

5.      As a consequence of Defendants' discriminatory denial of the Certificates, Newport has been unable to secure required licenses from the Connecticut Department of Public Health.  Furthermore, even if Newport had such licenses, Defendants have made clear they will not permit Newport's residents to move into either group home until Certificates have been issued.

6.      It is therefore clear that Defendants' actions are the cause of Newport's inability to open the group homes, and their inability to serve up to twelve (12) young adults with mental health disorders.

7.      These actions amount to discrimination on the basis of disability, in violation of the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Connecticut Fair Housing Act.

8.      Beyond their impact on Newport and its clients, Defendants' discriminatory actions convey a deep hostility to community living for people with disabilities and prevent Newport and similarly situated providers of housing and services for people with disabilities from carrying out their own programs of community support.

## II.     JURISDICTION

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiffs'

claims arise out of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, the Americans with

Disabilities Act, 42 U.S.C. § 12132, *et seq.*, and Section 504 of the Rehabilitation Act of 1973,

29 U.S.C. § 794.  The Court has supplemental jurisdiction over Plaintiffs' Connecticut Fair

Housing Act claims under 28 U.S.C. § 1367.

10.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201, 2202 and 1343, and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

## III.     VENUE

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the incidents giving rise to

this action occurred within this judicial district.

## IV.     PARTIES

12.     Monroe RE LLC is a limited liability nonstock corporation that is the owner of

the properties located at 2495 Redding Road and 3236 Congress Street in Fairfield, Connecticut.

13.     CT YA Services LLC, d/b/a Newport Academy is a limited liability nonstock

corporation formed solely for the purposes of operating the Newport group homes at 2495

Redding Road and 3236 Congress Street in Fairfield, Connecticut, and it was the applicant for a

Certificate of Need ("CON") issued by the Connecticut Office of Health Strategy in July 2020.

14.     Defendant Town of Fairfield is a Connecticut municipality, and is a recipient of

Community Development Block Grants and other funds from the U.S. Department of Housing

and Urban Development ("HUD").

15.     Defendant Brenda L. Kupchick has been First Selectwoman of the Town of

Fairfield since November 25, 2019.  She is sued in her official and individual capacities.

4842-0645-1927, v. 1

## V.      APPLICABLE LEGAL AUTHORITY

16.     Defendants' actions described herein amount to disability discrimination in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, ("FHA") and its implementing regulations at 24 C.F.R. § Part 100.  In passing the FHA, Congress clearly pronounced "a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream."  H.R. Rep. No. 711, 100th Cong., 2d Sess. 18 (1988), *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173, 2179.

17.     The Town has previously been a defendant in litigation involving a group home for people with disabilities, so Defendants know they are obliged to comply with the federal Fair Housing Act, which prohibits discrimination on the basis of disability.  *See Stewart B. McKinney Foundation, Inc. v. Town Plan and Zoning Comm'n of the Town of Fairfield*, 790 F.Supp. 1197 (D.Conn. 1992).  A legal opinion letter secured by the Town in advance of its discriminatory acts cited to *McKinney* and other leading federal cases in cautioning the Town against actions that might violate Newport's rights under the Fair Housing Act.

18.     Defendants' actions similarly violate the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, ("ADA") and its implementing regulations at 28 C.F.R. § Part 35, which require the Town to administer all of its programs and activities—including its legislative, executive, zoning and code enforcement functions—in a manner that does not discriminate on the basis of disability, and further require the Town to "administer [its] services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d).

19.     As a recipient of federal financial assistance—including Community Development Block Grants and other funding from HUD—the Town is obligated to comply with

4

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and its

implementing regulations at 24 C.F.R. § Part 8, which prohibit discrimination on the basis of

disability by entities receiving federal financial assistance.  Defendants' actions violate the

Rehabilitation Act.

20.     Finally, Defendants' actions violate the Connecticut Fair Housing Act, C.G.S. §

46a-64c, which prohibits discrimination on the basis of disability.

## VI.     FACTS

21.     Knowing of the need for more community-based housing and services for young

adults experiencing anxiety, depression, trauma and other mental health conditions requiring a

more intensive treatment environment than could be delivered in their own family settings,

Newport began—in late 2018—to explore the feasibility of opening two small group homes in

the Town of Fairfield, each of which would provide housing and support for six young adults.

22.     To that end, in January 2019, Newport purchased two existing single-family

homes— at 2495 Redding Road and 3236 Congress Street, respectively, in the Town of

Fairfield—for purposes of establishing group homes.

23.     After closing on the purchase of the houses, Newport sought a determination of

zoning compliance from the Town's Planning Director, James Wendt, as a precondition for

securing building permits for renovations necessary to make both homes suitable for group home

occupancy.  Mr. Wendt issued the determination of zoning compliance for both homes on March

27, 2019.

24.     Thereafter, Newport's general contractor secured building permits from the Town

in April 2019 for both properties.  In reliance on the determination of zoning compliance and

those permits, Newport spent approximately $200,000 to renovate the homes to comply with standards applicable to group homes.  Those renovations were completed in May 2019.

25.     In May 2019, certain residents of Fairfield began to organize a group— subsequently incorporated in July 2019 as Neighbors for Neighborhood Preservation ("NNP")— whose stated purpose was to oppose Newport's group homes.  From that time to the present, NNP and its allies have waged a campaign in multiple forums to prevent Newport from opening the group homes, often by seeking to influence Defendants to support their positions concerning Newport's group homes.

26.     NNP encouraged other neighbors to contact the Town's elected and appointed officials to express their opposition to Newport's group homes.

27.     On May 24, 2019, at the direction of the Connecticut Office of Health Strategy ("OHS"), Newport filed its application for a Certificate of Need to operate the group homes.

28.     NNP and its allies held a "town hall" meeting on June 10, 2019, which was attended by 200 people, including then-First Selectman Michael Tetreau and then-Town Attorney Stanton Lesser, both of whom advised those in attendance that federal and state civil rights laws "constrained" the Town's ability to limit or regulate Newport's group homes.

29.     At that town hall meeting, community members opposed to the operation of Newport's group homes invoked coarse stereotypes of people with mental health diagnoses and suggested that Newport not be permitted to locate anywhere in the Town of Fairfield.

30.     On information and belief, shortly after this meeting, Mr. Tetreau and Mr. Lesser retained Ira Bloom and Nicholas Bamonte of the firm Berchem Moses to provide a legal opinion concerning the limits imposed by federal and state civil rights laws on the Town's ability to regulate Newport's group homes.

31.     Berchem Moses delivered its opinion letter on July 9, 2019, advising the Town that "[e]ven if a proposed group home is not afforded any protections under C.G.S. § 8-3e, federal laws prevent municipalities from taking any action against group homes that (a) is intentionally discriminatory [or] (b) disparately impacts disabled persons….[B]ecause municipalities have a very difficult burden to overcome these protections, these laws significantly limit the Town's authority over all group homes for disabled persons." *See* Exhibit No. 1 (Berchem Moses Legal Opinion of July 9, 2019).

32.     On July 9, 2019—months after Mr. Wendt made his findings of zoning compliance, the building permits issued, and renovations completed—several neighbors of the group homes filed petitions with the Town's Zoning Board of Appeals ("ZBA") seeking to overturn the Town's issuance of Newport's building permits.

33.     On September 18, 2019—consistent with the Berchem Moses legal opinion—the Fairfield ZBA affirmed the issuance of building permits for both Newport group homes.   Mr. Wendt appeared at the ZBA hearing and defended his determination of zoning compliance.

34.     In October 2019, several neighbors of the group homes appealed the ZBA decisions to the Superior Court for the Judicial District of Fairfield at Bridgeport.  The pendency of those appeals does not stay or impair the validity of the ZBA decisions.  C.G.S. § 8-8(h). Newport intervened in the Superior Court proceedings to protect its rights with respect to the group homes.

35.     On November 5, 2019, Defendant Kupchick was elected First Selectwoman.  She was sworn in to that office on November 25, 2019.  She appointed James Baldwin as Town Attorney.

36.     Shortly after the election, and responding to pressure from NNP and its allies, the Town began to coordinate with NNP and its allies in opposition to Newport's group homes. Notwithstanding the Berchem Moses legal opinion, Defendant Kupchick changed the Town's position from one of neutrality and scrupulous compliance with its federal civil rights obligations to one of outright hostility and opposition to Newport.

37.     For the past year and continuing through the date this Complaint was filed, Kupchick has taken actions—and directed Town employees and agencies to take or withhold actions—to thwart Newport's ability to open the group homes.  On information and belief, her actions followed the receipt in her office of many calls and letters from neighbors opposed to Newport's plans.

38.     When OHS announced—on January 24, 2020—that it would hold a public hearing on Newport's CON application, Kupchick wrote to Victoria Veltri, the OHS executive director, falsely claiming she had authority to "direct[ ] the Town's building department not to issue any approvals on [Newport's group homes] until there is a final judgment or court order in the [neighbors' Superior Court] litigation."  *See* Exhibit No. 2 (Kupchick Letter of February 13, 2020).

39.     Defendant Kupchick appeared and made a statement during the public comment time at the CON public hearing on March 4, 2020.  In that statement she said that she viewed Newport's group homes as "a medical facility, a business, and I don't believe businesses should be operating in residential areas in our town."  She said she "offered [Newport] the opportunity to locate space in a commercial zone."

40.     At the time of Kupchick's OHS comment, Fairfield's commercial zones were — and are now—located along U.S. Route 1 and Connecticut Route 58, the Town's busiest

8

commercial corridors dominated by retail, take-out restaurants, offices, and other business uses. The commercial zones comprise less than five percent (5%) of the Town's land area.

41.     The prospective residents of Newport's group homes are exclusively young adults with disabilities, experiencing anxiety, depression, trauma, and other mental health disorders. They require intensive treatment in tranquil neighborhood settings, such as the large single-family homes on large lots that Newport acquired on Redding Road and Congress Street, which are in the greater Greenfield Hill neighborhood and "Residence AAA" district.

42.     At the time Kupchick made her statement to OHS, Fairfield's commercial zones were entirely incompatible with the therapeutic needs of the prospective residents of Newport's group homes, and they continue to be incompatible to the present day.

43.     Kupchick's OHS statement—and her subsequent actions outlined herein—have the purpose and effect of excluding Newport and its prospective clients from desirable residential neighborhoods in the Town of Fairfield, and limiting them to incompatible commercial zones entirely lacking in the kind of housing and supportive atmosphere necessary for their recovery.

44.     Notwithstanding the Kupchick Letter and statement, OHS determined, on July 7, 2020, that Newport had demonstrated a need for its two group homes, and authorized Newport—subject to securing licenses from the Connecticut Department of Public Health ("DPH")—to open and operate both group homes in Fairfield, under the category Mental Health Residential Living Center ("MHRLC").

45.     State law defines a MHRLC as an entity "providing a supervised, structured and supportive group living arrangement which includes psychosocial rehabilitation services and may also provide assistance in obtaining necessary community services to persons in need of mental health services." Conn. Agencies Regs. § 19-13-D1(b)(3)(J).

9

46.     The State's definition of MHRLC is consistent with that of "group home" used by the U.S. Department of Justice and HUD—the federal agencies charged with interpretation and enforcement of the Fair Housing Act—which "refers to a dwelling that is or will be occupied by unrelated persons with disabilities….Group homes … may be opened by individuals or by organizations, both for-profit and not-for-profit." *Joint Statement on State and Local Land Use Laws and Practices and the Application of the Fair Housing Act*, (Nov. 10, 2016), https://www.justice.gov/opa/file/912366/download.

47.     In order to secure DPH licenses, Newport must show "evidence of compliance with local zoning ordinances and local building codes."  Conn. Agencies Regs. § 19a-495-551(b)(2)(A)(i).

48.     Despite fulfilling all requirements for issuance of the Certificates of Occupancy—including Mr. Wendt's March 2019 determination of zoning compliance and passing Town building and fire code inspections in September 2020—Defendants have maintained that they will not issue those Certificates for Newport's group homes.

49.     On October 22, 2020, Mr. Wendt informed a Newport employee that Town Attorney James Baldwin was holding up issuance of Certificates of Occupancy for each group home, and that Newport's counsel should be in contact with Mr. Baldwin to discuss the situation.

50.     On November 5, 2020, in response to an inquiry from Newport's counsel, Mr. Baldwin advised that Certificates of Occupancy "will not be issued" because Newport had received OHS approval as a MHRLC rather than as a group home.  *See* Exhibit No. 3 (Baldwin Letter of November 5, 2020).

51.     The Baldwin Letter goes on to say that, as MHLRCs, Newport's group homes "do[ ] not qualify as protected Group Home[ ] under the Fair Housing Act," so Newport "will

therefore need to submit an application for a Special Exception … in order to be in compliance with Fairfield zoning regulations and receive [Certificates of Occupancy]" for the group homes.

52.     The Baldwin Letter exemplifies Defendants' shifting rationales for withholding the Certificates of Occupancy, insofar as it abandons the rationale in the Kupchick Letter—the pendency of the neighbors' appeals to Superior Court—and adopts an entirely different rationale, lacking in factual or legal merit.

53.     Since 2015, the Town has approved and welcomed at least two other similarly situated group homes for adult women with MHRLC licenses operated by Center for Discovery, a for-profit entity.  Each is described as "an acute care eating disorder treatment center, meaning that it offers the highest level of care including residential treatment." Center for Discovery, https://centerfordiscovery.com/locations/fairfield/ (last visited Jan. 10, 2021).

54.      The Center for Discovery MHRLCs are located, respectively, at 4536 Congress Street and 600 Wellington Drive, in the same greater Greenfield Hill neighborhood of Fairfield where Newport proposes to establish its group homes, and both are in the "Residence AAA" district.  The Center for Discovery describes the neighborhood as "quiet, serene and an ideal place for healing." Center for Discovery, https://centerfordiscovery.com/locations/fairfield/ (last visited Jan. 10, 2021).

55.     From 2015 to the present, clients stay at the Center for Discovery group homes between 30 and 90 days, with an average of 45 days.  These stays are virtually identical to those anticipated for residents of Newport's group homes.

56.     The Town and its elected officials did not provide written or oral statements in opposition to either Center for Discovery group home in the CON process, nor did they suggest that the Center for Discovery "locate space in a commercial zone."

57.     The Town and its elected officials did not object that the Center for Discovery group homes were operated by a for-profit entity, or that its clients' average stays were 45 days.

58.     The Town and its elected officials did not require Center for Discovery to go through a Special Exception process and did not delay the issuance of Certificates of Occupancy for those homes.

59.     In fact, the Town posted a notice on its municipal website welcoming the Center for Discovery and providing a link to yet another Center for Discovery group home for adolescents, located at 615 Mine Hill Road in the Greenfield Hill neighborhood.  That posting remains available on the Town's website, at https://www.fairfieldct.org/cednews/?FeedID=1385 (last visited Jan. 10, 2021).

60.     The Town's historical treatment of MHLRCs, the decision conveyed in the Baldwin Letter, and the letter's rationale, are so arbitrary and unsupported that they likely resulted from an intent to discriminate against Newport and its disabled prospective residents.

61.     In acting and failing to act, as outlined herein, Defendants have engaged in intentional discrimination against Newport on the basis of disability, and Defendants' actions have had an unjustified disparate impact on the basis of disability.

62.     As a result of Defendants' discrimination, Newport has been unable to serve young adults with mental health disabilities in its group homes in Fairfield.

63.     Despite the Town having previously been a defendant in federal litigation over housing for people with disabilities, and despite being advised by the Berchem Moses legal opinion, Defendants have engaged—since at least February 2020—in a concerted campaign of opposition to the opening of Newport's group homes.

64.     Since at least February 2020, Defendants have acted in coordination with, and in response to the lobbying of, NNP and its allies to deprive Newport of the approvals necessary to open and operate the group homes.

65.     The Kupchick Letter and the Baldwin Letter are both evidence of the extent to which Defendants have departed from the normal procedural sequence and substantive criteria applicable to group homes seeking to operate in Fairfield.

66.     In the former, Kupchick purports to supplant the authority of the Planning Director and the ZBA to make determinations of zoning compliance, and to direct Town employees and agencies to disregard normal procedural rules applicable to same.

67.     In the latter, Baldwin adopts a nonsensical position based on erroneous factual assumptions.  Each letter ignores the fact that none of the steps Defendants have taken to thwart Newport's group homes were applied to those operated by the Center for Discovery.

68.     Requiring Newport to apply for special exceptions to open the group homes is burdensome and discriminatory under the FHA because it imposes special terms and conditions on occupancy that would not be imposed if prospective residents were not people with disabilities, and Newport is not required to acquiesce in violation of its rights to avoid a claim that its injuries are self-inflicted.

69.     Requiring Newport to apply for a special exception has a discriminatory impact on people with mental illnesses, because it holds the future residents up to public scrutiny in a way that unrelated people without mental illnesses would not experience.

70.     Requiring Newport to apply for a special exception and limiting it to operation in commercial areas perpetuates segregation on the basis of disability in the Town of Fairfield.

4842-0645-1927, v. 1

71.     In addition, the process has the potential of being burdensome and, based on the previous public hearings dealing with this case, could be quite controversial and unpleasant and further inflame public opposition to Newport's plans. If the exception were granted and the neighbors took an appeal, it could also be expensive for Newport.

## VII.   INJURY TO PLAINTIFFS

72.     Defendants, acting individually, directly, and/or through their agents, have engaged in discrimination against Newport on the basis of the disabilities of Newport's clients.

73.     Each Defendant was the actual or apparent agent, employee, manager or representative of each of the other Defendants.  Each Defendant, in doing the acts as alleged in this Complaint, was acting in the course and scope of his, her or its actual or apparent authority pursuant to such agencies; or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each agent as principal.

74.     As a result of Defendants' unlawful actions, Newport has been unable to open two group homes in Fairfield and, consequently, has suffered, continues to suffer, and will in the future suffer great and irreparable loss and injury, including, but not limited to economic losses, injury to reputation, interference with its ability to carry out its mission to serve people with mental health diagnoses in integrated, community-based settings, and deprivation of its ability to serve its clients in high-opportunity neighborhoods.

75.     Newport has experienced significant hardship due to Defendants' public hostility to its operations.  It reasonably believes that Defendants will block its ability to consider other community residences in Fairfield, notwithstanding the strong demand for such settings in southwestern Connecticut.

76.     Defendants' opposition to Newport's group homes and their efforts to undermine Newport caused significant reputational harm to Newport, putting it at a disadvantage with respect to future opportunities to open group homes for people with disabilities in Connecticut.

77.     Defendants' actions have frustrated Newport's mission by eliminating housing opportunities for people with disabilities.  In Connecticut, there is a significant need for supportive housing for persons with disabilities, particularly in higher-opportunity communities like Fairfield.

78.     Defendants and/or their agents knew that Newport's clients had disabilities, and acted intentionally and willfully, with callous and reckless disregard for the statutorily protected rights of Newport and its clients, entitling Plaintiffs to punitive damages.

79.     Unless enjoined, Defendants or their agents will continue to engage in unlawful discrimination, with the purpose and effect of preventing Newport from serving clients in Fairfield.   Newport has no adequate remedy at law and is now suffering, and will continue to suffer, irreparable injury from Defendants' discriminatory acts unless relief is provided by this Court.

80.     Defendants' actions eliminated housing opportunities for individuals with disabilities in a high-opportunity area, perpetuating the concentration of supportive housing in Connecticut's urban centers which have higher rates of poverty.  In doing so, Defendants have violated 42 U.S.C. §§ 3604(f) and 3617.

81.     By making statements indicating that people with disabilities like Newport's clients should not live in residential neighborhoods—such as those on Redding Road and Congress Street—Defendants have conveyed to people with disabilities and to the general public

that discriminatory animus against people with disabilities is legal and/or acceptable in the housing market.  In doing so, Defendants have violated 42 U.S.C. § 3604(c).

82.     In continuing to withhold Certificates of Occupancy for Newport's group homes, Defendants have engaged in coercion, intimidation, and interference in retaliation for Newport's exercise of its rights under the Fair Housing Act, in violation of 42 U.S.C. § 3617.

83.     By subjecting Newport and its residents to discrimination as alleged herein, Defendants have violated Title II of the ADA, 42 U.S.C. § 12131, *et seq*., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

84.     By taking the actions described herein, Defendants have also violated the Connecticut Fair Housing Act, C.G.S. § 46a-64c.

## CAUSES OF ACTION

### COUNT ONE
**(All Plaintiffs Against All Defendants)**

**Unlawful Discrimination under the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.**

85.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 84 above.

86.     By virtue of its mission, Plaintiffs are associated with individuals who have "handicaps" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h).

87.     Defendants' acts, as described herein, violate 42 U.S.C. § 3604(f)(1), in that they otherwise make housing unavailable on the basis of disability, and 42 U.S.C. § 3604(f)(2), in that they have discriminated on the basis of "handicap" with respect to the provision of services or facilities in connection a dwelling.

88.     Defendants' statements, as described herein, violate 42 U.S.C. § 3604(c), in that they indicate a preference, limitation or discrimination on the basis of disability.

16

89.     Through their actions and those of their employees and agents, as described herein, Defendants attempted to coerce, intimidate, threaten, or interfere with Newport's operation of the group homes, in violation of 42 U.S.C. § 3617 and caused Newport's injuries as detailed above.

90.     Defendants' acts in violation of the Fair Housing Act caused Plaintiffs' injuries as detailed above.

91.     Defendants' actions were willful and/or taken in reckless disregard of the civil rights of Plaintiffs and Newport's clients, thereby making Plaintiffs eligible for punitive damages.

**COUNT TWO**
**(All Plaintiffs Against All Defendants)**

**Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*.**

92.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 84 above.

93.     Defendants discriminated and continue to discriminate on the basis of disability in violation of Title II of the ADA by acting in a manner that, among other things:

a.     Denies meaningful access to community-based housing for people with mental health diagnoses in the Town of Fairfield.

b.     Aids or perpetuates discrimination against people with mental health diagnoses.

c.     Uses methods of administration that discriminate against people with mental health diagnoses, by failing to ensure that such people have meaningful access to housing in the Town of Fairfield.

d.     Otherwise limits people with mental health diagnoses from enjoying housing or the opportunity to obtain such housing in the Town of Fairfield by engaging in the policies,

17

practices, acts, and omissions described above.

94.     As a result of the discrimination alleged in the previous paragraph, Plaintiffs have sustained the injuries described herein.

## COUNT THREE
### (All Plaintiffs Against All Defendants)

### Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

95.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 84 above.

96.     Defendants discriminated and continue to discriminate on the basis of disability in violation of Section 504 of the Rehabilitation Act by acting in a manner that, among other things:

a.     Denies meaningful access to community-based housing for people with mental health diagnoses in the Town of Fairfield.

b.     Aids or perpetuates discrimination against people with mental health diagnoses.

c.     Uses methods of administration that discriminate against people with mental health diagnoses, by failing to ensure that such people have meaningful access to housing in the Town of Fairfield.

d.     Otherwise limits people with mental health diagnoses from enjoying housing or the opportunity to obtain such housing in the Town of Fairfield by engaging in the policies, practices, acts, and omissions described above.

97.     As a result of the discrimination alleged in the previous paragraph, Plaintiffs have sustained the injuries described herein.

## COUNT FOUR
### (All Plaintiffs Against All Defendants)

### Connecticut Fair Housing Act, C.G.S. § 46a-64c

98.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 84 above.

99.     By virtue of its mission, Plaintiffs are associated with individuals who have "mental disabilities" within the meaning of the Connecticut Fair Housing Act, C.G.S. § 46a-64b.

100.     Defendants' acts, as described herein, violate C.G.S. § 46a-64c (a)(6), in that they otherwise make housing unavailable on the basis of disability, and amount to discrimination in the provision of services or facilities in connection with a dwelling.

101.     Defendants' statements, as described herein, violate C.G.S. § 46a-64c (a)(3), in that they indicate a preference, limitation or discrimination on the basis of disability.

102.     Through their actions and those of their employees and agents, as described herein, Defendants attempted to coerce, intimidate, threaten, or interfere with Newport's operation of the group homes, in violation of C.G.S. § 46a-64c (a)(9).

103.     Defendants' acts in violation of the Connecticut Fair Housing Act caused Plaintiffs' injuries as detailed above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

(1)     Enter a declaratory judgment finding that the foregoing actions of Defendants violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.; the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Connecticut Fair Housing Act, C.G.S. § 46a-64c;

4842-0645-1927, v. 1

(2)      Enter a permanent injunction directing Defendants and their directors, officers, agents and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3)      Award compensatory damages to Newport in an amount that would fully compensate it for economic losses, injury to reputation, interference with its ability to carry out its mission to serve people with mental health diagnoses in integrated, community-based settings, and deprivation of its ability to serve its clients in high-opportunity neighborhoods;

(4)      Award Plaintiffs punitive damages in an amount to be determined at trial that would punish Defendants for their intentional, malicious, willful, callous, wanton, and reckless disregard for its rights, and would effectively deter Defendants from engaging in similar conduct in the future;

(5)      Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 3613(c)(2), 1988(b), and 12205; 29 U.S.C. § 794a and C.G.S. § 46a-104;

(6)      Order such other relief as this Court deems just and equitable.

Dated: January 19, 2021

/s/ Michael Allen
Michael Allen, *Application for Pro Hac Vice To Be Filed*
Tara Ramchandani, *Application for Pro Hac Vice To Be Filed*
RELMAN COLFAX PLLC
1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
mallen@relmanlaw.com
tramchandani@relmanlaw.com


/s/ David Thomas
David Thomas
Greenberg Traurig LLP
One International Place, Suite 2000
Boston, MA  02110
(617) 310-6085
thomasda@gtlaw.com

/s/ Brian Rich
Brian Rich
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 297-4698
rich@halloransage.com

*Attorneys for Plaintiffs*

4842-0645-1927, v. 1