# EXHIBIT

# 1

**BERCHEM MOSES** PC

BERCHEMMOSES.COM

75 Broad Street
Milford, CT 06460
T: 203.783.1200
F: 203.878.2235

1221 Post Road East
Westport, CT 06880
T: 203.227.9545
F: 203.226.1641

Robert L. Berchem
Marsha Belman Moses
Stephen W. Studer
Richard J. Buturla
Floyd J. Dugas
Rolan Joni Young
Ira W. Bloom
Jonathan D. Berchem ⊛
Michelle C. Laubin ◆
Gregory S. Kimmel
Christopher M. Hodgson
Christine Owens Morgan

Mario F. Coppola
Meredith G. Diette
Ryan P. Driscoll ◆ ·
Bryan L. LeClerc ◆
Brian A. Lema
Douglas E. LoMonte
Brian W. Smith
Christine A. Sullivan

Paula N. Anthony ◆
Alfred P. Bruno
Jacob P. Bryniczka
Eileen Lavigne Flug
Peter V. Gelderman ◊
Warren L. Holcomb
Eugene M. Kimmel

Nicholas R. Bamonte
Eric Barba ▪
Richard C. Buturla
Carolyn Mazanec Dugas
Matthew D. Glennon
Rebecca E. Goldberg
John Y. Khalil
Justin Stanko
Matthew L. Studer

▪ - Also Admitted in CA
◊ - Also Admitted in IL
▸ - Also Admitted in MA
· - Also Admitted in NJ
◆ - Also Admitted in NY
⊛ - Also Admitted in PA

**PLEASE REPLY TO
WESTPORT OFFICE**

Michael C. Tetreau
First Selectman, Town of Fairfield
725 Old Post Road
Fairfield, CT 06824

July 9, 2019

Re:  Authority to Regulate Group Homes

Dear First Selectman Tetreau:

This letter summarizes the applicable state and federal laws and regulations pertaining to "group homes." Overall, municipal authority over group homes is extremely limited.

**1.  Overview of State Law**

Section 8-3e of the General Statutes expressly limits municipal authority to regulate certain group homes through zoning. Specifically, municipalities are prohibited from treating the following group homes differently than single-family residences:

> "[A]ny community residence that houses six or fewer persons receiving mental health or addiction services and necessary staff persons paid for or provided by the Department of Mental Health and Addiction Services and that has been issued a license by the Department of Public Health…if a license is required… ."

Few other state statutes expressly address local regulatory authority over group homes. Section 8-3g provides that local zoning regulations cannot prohibit group homes "in any area which is zoned to allow structures containing two or more dwelling units." Section 8-3f provides that a group home cannot be located within 1000 feet of another group home without the approval of the local zoning commission.

*Even if C.G.S. § 8-3e does not apply to a group home, federal laws still protect all group homes from municipal regulation and enforcement.*

**2.  Federal Law Protections for Group Homes**

Although a number of federal laws, such as Title II of the Americans with Disabilities Act[1], Section 504 of the Rehabilitation Act of 1973[2], and Title VI of the Civil Rights Act of 1964[3], limit municipality authority to some degree, the primary federal law restricting regulation of group homes is the Fair Housing Act ("Act")[4].

---

[1] 42 U.S.C. §12132.
[2] 29 U.S.C. § 794.
[3] 42 U.S.C. § 2000d.
[4] 42 U.S.C. §§ 3601–19.

At its core, the Act prohibits municipalities from implementing or enforcing regulations that effectively deny housing or make housing unavailable to disabled persons. Individuals with physical and mental impairments, including those recovering from drug addiction and alcoholism, are protected under the Act. Examples of municipal action prohibited under the Act include:[5]

- Imposing restrictions or additional conditions on group housing for persons with disabilities that are not imposed on families or other groups of unrelated individuals.
- Imposing restrictions on housing because of alleged public safety concerns that are based on stereotypes about the residents' or anticipated residents' membership in a protected class.
- Enforcing otherwise neutral laws or policies differently because of the residents' protected characteristics.
- Refusing to provide reasonable accommodations to land use or zoning policies when such accommodations may be necessary to allow persons with disabilities to have an equal opportunity to use and enjoy the housing.

There are three ways that the Act protects group homes.[6] First, a municipality cannot *intentionally discriminate*, which occurs: (1) when a municipality enacts a local law or regulation that clearly treats disabled persons differently, such as a zoning regulation that prohibits group homes in certain zoning districts or an ordinance that requires a license to operate a group home; or (2) if a local law appears to be facially neutral, but its passage or enforcement is motivated by a discriminatory objective.[7] Second, even if a municipality has not intentionally discriminated against group home residents, its actions may still be prohibited under the Act if they have caused a "significantly adverse or disproportionate impact" on a group of disabled persons,[8] or a disparate impact.[9] Third, a municipality must provide *reasonable accommodations* to disabled persons by waiving certain regulatory requirements if the accommodation has been requested and is reasonable and necessary to afford disabled persons equal opportunity to use and enjoy housing.[10] As a result, even if a municipality passes regulations applicable to group homes, it is highly possible that a group home would be entitled to a reasonable accommodation effectively waiving such regulations.

Under the Act, the court may (a) award preventative relief, including a permanent or temporary injunction, restraining order, or other order against the municipality; (b) award other relief as the court deems appropriate, including monetary damages to persons aggrieved; (c) to vindicate the public interest, assess a civil penalty against the municipality in an amount not exceeding $50,000 for a first violation; and in an amount not exceeding $100,000, for any subsequent violation.[11] In addition, the court has discretion to allow the prevailing party attorney's fees and costs.[12]

---

[5] *See* U.S. Dep't of Hous. & Urban Dev. and U.S. Dep't of Justice, Joint Statement: State and Local Land Use Laws and Practices and the Application of the Fair Housing Act (2016).
[6] Brian J. Connolly & Dwight H. Merriam, *Planning and Zoning for Group Homes: Municipality Obligations and Liability Under the Fair Housing Amendments Act*, 47 Urb. Law. 225, 244 (2015).
[7] *See generally Regional Economic Community Action Program v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002).
[8] *Id.* at 52–53.
[9] Also referred to as "discriminatory effect."
[10] *Tsombanidis v. West Haven Fire Department*, 352 F.3d, 578 (2d Cir. 2003).
[11] 42 U.S.C. § 3614(d)(1).
[12] 42 U.S.C. § 3614(d)(2).

### 3. Connecticut Cases

The 1992 Connecticut federal district court decision in *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*[13] illustrates how the federal law theories described above preclude a municipality's application and enforcement of its zoning regulations against a proposed group home. The McKinney Foundation (the "Foundation") intended to rent a two-family house located on Oldfield Road in Fairfield to no more than seven HIV-infected persons.[14] The Commission decided that the Foundation's proposed use of its property required a special exception.[15] The Foundation claimed, and the court ultimately agreed, that the Town had violated the Act under all three theories: intentional discrimination, disparate impact and reasonable accommodation.[16]

First, the *McKinney* court concluded that the Commission intentionally discriminated by bowing to negative public pressure, unreasonably interpreting its zoning regulations and departing from normal procedures.[17] Alternatively, the court found that the Commission's decision would have a disparate impact because it denied the prospective residents the right to live in the residence of their choice in Fairfield, and no other family group had ever been subjected to a special exception requirement in Fairfield.[18] Finally, the court determined that Foundation raised sufficiently serious questions as to whether the Commission should have waived any requirement for a special exception as a reasonable accommodation.[19] As a result, the court granted an injunction preventing the Town from taking any enforcement action against the proposed group home.[20] The reported decision does not reference money damages.

In 2001, in *Tsombanidis v. City of West Haven*, the City of West Haven intentionally discriminated when it enforced its zoning regulations in an effort to prevent a group home from operating in a residential district as an illegal boarding house. Key considerations for the trial court included the following: (1) application of the regulations would prevent group homes from operating in single family districts; (2) the city's enforcement efforts were tainted by significant public opposition and bias; (3) the city's repeated enforcement efforts continued despite knowledge of the potential implications under the Act; and (4) evidence existed of personal bias of city officials against the disabled residents charged with enforcement.[21] These factors established that the disabled status of the residents was a motivating factor in the city's enforcement efforts, and the city failed to prove that it would not have taken the same actions if it had not been motivated by such unlawful purpose.[22] The court granted an injunction preventing the city from taking enforcement action against the group home, entered declaratory judgment that the city had illegally

---

[13] *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*, 790 F. Supp. 1197 (D. Conn. 1992).
[14] *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield, supra*, 790 F. Supp. 1203-05.
[15] *Id.* at 1205.
[16] *Id.* at 1207.
[17] *Id.* at 1211-12.
[18] *Id.* at 1219-21.
[19] *Id.* at 1221-22.
[20] *Id.* at 1222.
[21] *Tsombanidis v. City of West Haven*, 180 F.Supp.2nd 262, 287-89 (D. Conn. 2001)
[22] *Id.* at 289.

discriminated, awarded $1,000 as compensatory damages for emotional distress of one plaintiff, and awarded attorney's fees to the plaintiffs.[23]

Similarly in 2003, in *First Step, Inc. v. City of New London*, the Town of New London intentionally discriminated when it denied a special permit to a group home. The town offered reasons such as increased parking demand, increased traffic, concerns about the center's impact on pedestrian safety, and the center's failure to prepare a public safety plan.[24] But the court found that the group home rebutted the city's rationale by showing that the traffic and parking impacts would be minimal and that the regulations did not require a public safety plan; ultimately proving that the permit denial was based on illicit pretext.[25] The court ordered that the city grant appropriate zoning approvals for the group home and awarded attorney's fees to the plaintiff.[26]

### 4. Conclusion

As discussed above, the Town has limited authority to regulate and enforce against group homes. Even if a proposed group home is not afforded any protections under C.G.S. § 8-3e, federal laws prevent municipalities from taking any action against group homes that (a) is intentionally discriminatory; (b) disparately impacts disabled persons; or (c) can be avoided with a reasonable accommodation. Because municipalities have a very difficult burden to overcome these protections, these laws significantly limit the Town's authority over all group homes for disabled persons.

Please contact us should you have any further questions or concerns.

Very truly yours,

Ira W. Bloom

Nicholas R. Bamonte

---

[23] *Id.* at 293-95.
[24] *First Step, Inc. v. City of New London*, 247 F. Supp. 2d 135, 154 (D. Conn. 2003)
[25] *Id.* at 151-54.
[26] *Id.* at 157-58.